## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNETH CORLEY**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO.  12-1677**

**HOWARD PRINCE**                                      **SECTION "C"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Kenneth Corley ("Corley"),[2] is a convicted prisoner incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[3]  On September 7, 1989, Corley was indicted

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Both the state and federal records contain two spellings of the petitioner's surname.  He was convicted under the name "Corley" and he consistently signs his name "Corley."  The Court will use this spelling.

[3]Rec. Doc. No. 3.

by a Grand Jury in Orleans Parish with the first degree murder of Isabela Martinez.[4]  He entered a

plea of not guilty and not guilty by reason of insanity at his arraignment on September 20, 1989.[5]

The record reflects that, in 1988 and 1989, Corley was housed in the Feliciana Forensic

Facility ("FFF") under the treatment of Dr. Alan Appelbaum and Dr. Aris Cox, who began treating

Corley in 1988 for a schizo-affective illness.  Corley had been off of anti-psychotic medication since

December of 1988 and had been allowed out of FFF on passes without incident.  Dr. Appelbaum

believed that Corley suffered from a serious substance abuse disorder, that he knew right from

wrong, and that he was not psychotic or schizophrenic since he could function for long periods

without medication.  Both doctors believed that Corley's psychotic episodes were brought on by

alcohol or drug abuse.

On July 9, 1989, Corley failed to return to FFF after being out on an unsupervised furlough.

The FFF staff requested that Orleans Parish Criminal District Judge Leon Cannizzaro issue a warrant

for Corley's arrest, because he could be dangerous without his psychiatric medication.  The next

day, July 10, 1989 at around 7:00 a.m., the New Orleans Police Department received a call

complaining of criminal damage to the residence of Isabella Martinez at 1914 General Taylor

Street.[6]  Officer Brian Monteverde spoke to Mrs. Martinez and observed that the front door of her

home had been tampered with but still could be locked.

Later that same day, Officer Michael Kilbride responded to a call that a woman was

screaming for help at the same address.  When he arrived, he saw that the front door had been

---

[4]St. Rec. Vol. 1 of 5, Indictment, 9/7/89.

[5]St. Rec. Vol. 1 of 5, Minute Entry, 9/20/89.

[6]The facts of the case were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Corley*, 653 So.2d 722, 723-24 (La. App. 4th Cir. 1995); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 94-KA-0810, pp. 1-4, 3/29/95.

broken open.  He entered the home and started up the stairs when he heard and saw a man running towards him down the stairs.  Neighbors later identified the man as Kenneth Corley, who had lived with his family in the neighborhood for approximately 16 years.  The officer Kilbride struggled with Corley, who escaped out of the front door.  Officer Kilbride and Officer Michael Caesar were able to apprehend him.  He was sweaty, barefoot, and wearing blood stained clothes.  They returned with him to the house to further investigate.

Officer Monteverde also arrived to assist.  He and Officer Kilbride found Mrs. Martinez upstairs naked and severely beaten in a pool of blood.  She spoke to the officers and later died from her wounds.  Dr. James Elston, a forensic pathologist determined at the autopsy that the cause of death was a pelvic fracture with internal bleeding, a laceration of the vaginal and anal area, multiple rib fractures, and chest bleeding.  Mrs. Martinez also suffered multiple cuts and bruises over her entire body consistent with someone having inflicted them with his hands and feet.

At a hearing held November 14, 1989, Corley was found competent to assist with his defense.[7]  At a separate motion hearing, the psychiatric experts testified before the Trial Court that they opined that Corley was most likely psychotic and unable to distinguish between right and wrong at the time he committed the crime.[8]

---

[7]St. Rec. Vol. 1 of 4, Minute Entry, 11/14/89.

[8]St. Rec. Vol. 1 of 4, Minute Entry, 3/20/90; *see also* Letter to Court, 12/19/89.

Corley eventually was tried before a jury on January 29, 30 and 31, 1991, and was found guilty as charged.[9]  On the recommendation of the jury, the Trial Court sentenced Corley on March 15, 1991, to serve life in prison without benefit of parole, probation, or suspension of sentence.[10]

On November 9, 1992, the Trial Court granted Corley and out of time appeal and appointed him counsel.[11]  On appeal to the Louisiana Fourth Circuit Court of Appeal, Corley's appointed counsel argued two errors:[12] (1) the Trial Court erred in denying the defense a continuance to secure the presence of Dr. Juarez to testify at trial; and (2) the Trial Court erred in admitting irrelevant, immaterial, and inflammatory testimony.  On March 29, 1995, the Louisiana Fourth Circuit affirmed Corley's conviction and sentence finding no merit in the first claim.  The Court also resolved that some of the arguments made in support of the second claim were in procedural default for lack of contemporaneous objection and the remainder of the arguments were without merit.[13]

Corley's counsel sought review in the Louisiana Supreme Court, and the Court denied the writ application without stated reasons on November 13, 1995.[14]  Corley's conviction became final 90 days later, Monday, February 12, 1996,[15] when he did not file a writ of certiorari with the United

---

[9]St. Rec. Vol. 1 of 5, Trial Minutes, 1/29/01; Trial Minutes, 1/30/91; Trial Minutes, 1/31/91; Jury Verdict, 1/31/91; Jury Verdict Poll, 1/31/91; St. Rec. Vol. 2 of 5, Trial Transcript, 1/29-31/91.

[10]St. Rec. Vol. 1 of 5, Sentencing Minutes, 3/15/91; Jury Sentencing Recommendation, 2/4/91; St. Rec. Vol. 2 of 5, Sentencing Transcript, 3/15/91.

[11]St. Rec. Vol. 1 of 5, Trial Court Order, 11/9/92; Minute Entry, 11/10/92.

[12]St. Rec. Vol. 2 of 5, Appeal Brief, 94-KA-0810, 10/25/94.

[13]*State v. Corley*, 653 So.2d at 722; St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 94-KA-0810, 3/29/95.

[14]*State v. Corley*, 662 So.2d 464 (La. 1995); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 95-K-1040, 11/13/95; La. S. Ct. Writ Application, 95-K-1040, 4/26/95 (dated 4/26/95); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 95-K-1040, 4/26/95.

[15]The ninetieth day fell on Sunday, February 11, 1996, causing the last day to fall on the next business day. La. Code Crim. P. art. 13 (weekends and holidays not included in calculation of period when it would otherwise be the last day of the period).

4

States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    <u>State Post-Conviction Proceedings</u>

Almost two years later, on January 21, 1998, Corley submitted an application for post-conviction relief to the Trial Court asserting the following grounds for relief:[16] (1) insufficient evidence to support the conviction; (2) the Trial Court erred in denying the defense's motion for continuance; (3) the Trial Court erred in admitting irrelevant, immaterial, and inflammatory evidence; (4) ineffective assistance of counsel for failure to object to his appearing in prison clothes; (5) ineffective assistance of counsel for failure to object to other crimes evidence, inflammatory testimony and failure to request limiting instruction on impeachment evidence and other crimes evidence; and (6) ineffective assistance of counsel for failure to object to the alternate participating in deliberations.  The Trial Court denied the application without stated reasons on February 13, 1998.[17]

Over six weeks later, on April 2, 1998, Corley submitted an untimely writ application to the Louisiana Fourth Circuit seeking review of the Trial Court's order.[18]  The Court denied the application on May 11, 1998, finding no merit in his claims.[19]

---

[16]St. Rec. Vol. 4 of 5, Application for Post-Conviction Relief, dated 1/21/98.

[17]St. Rec. Vol. 4 of 5, Trial Court Order, 2/13/98.

[18]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 98-K-0825, 4/9/98 (dated 4/2/98).  Pursuant to La. Code Crim. P. art. 922 and La. App. R. 4-3, Corley had 30 days from issuance of the Trial Court's ruling to submit the writ application for filing, which he did not do.

[19]St. Rec. Vol. 4 of 5, 4th Cir. Order, 98-K-0825, 5/11/98.

Over three months later, Corley submitted an untimely writ application to the Louisiana Supreme Court on August 22, 1998.[20]  On July 2, 1999, the Court denied the application in part and granted it in part to remand the matter for the Trial Court to conduct a hearing to determine whether Corley was wearing prison clothes at trial and whether counsel's failure to raise the issue at trial was ineffective assistance.[21]

On July 8, 1999, the Trial Court determined that there was no need for an evidentiary hearing because trial counsel advised the court before trial that there was no objection to Corley's appearance in a prison uniform.[22]  About one year later, on July 5, 2000, Corley submitted a motion to enforce asking the Louisiana Supreme Court to force the Trial Court to hold a hearing.[23]  The Court denied the motion on August 23, 2000, because the Trial Court's judgment obviated the need for a hearing.[24]

Over ten years later, on October 22, 2010, Corley submitted a second application for post-conviction relief to the state trial court raising the following grounds for relief:[25] (1) prosecutorial misconduct occurred when the prosecutor refused to subpoena Dr. Juarez for trial; (2) he was denied fairness when he was allowed on unsupervised pass after being taken off of psychiatric medication and was then charged with a crime caused by a psychiatric episode; and (3) ineffective assistance

---

[20]St. Rec. Vol. 4 of 5, La. S. Ct. Writ Application, 98-KH-2292, 8/27/98 (postmarked 8/25/98, dated 8/22/98). Pursuant to La. S.Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[21]*State ex rel. Corley v. State*, 747 So.2d 5 (La. 1999); St. Rec. 4 of 5, La. S.Ct. Order, 98-KH-2292, 7/2/99.

[22]St. Rec. Vol. 4 of 5, Trial Court Order, 7/8/99.

[23]St. Rec. Vol. 4 of 5, La. S.Ct. Motion to Enforce, 98-KH-2292, 7/12/00 (postmarked 7/5/00).

[24]St. Rec. Vol. 4 of 5, La. S.Ct. Order, 1998-KH-2292, 8/23/00.

[25]St. Rec. Vol. 5 of 5, Application for Post-Conviction Relief, dated 10/26/10.

of counsel induced by an impediment caused by the State.  The Trial Court denied the application as impermissibly successive under La. Code Crim. P. art. 930.4(D).[26]

On August 18, 2011, the Louisiana Fourth Circuit denied Corley's related writ application finding that he was not entitled to relief and that there was no error in the Trial Court's ruling.[27]  The Louisiana Supreme Court denied Corley's subsequent writ application on May 4, 2012, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995), which prohibit applications seeking untimely post-conviction relief, and citing La. Code Civ. P. art. 930.4(D), which prohibits review of successive petitions.[28]

## III.   Federal Petition

On July 19, 2012, the clerk of this Court filed Corley's petition for federal habeas corpus relief, in which under a broad reading he raised the following grounds for relief:[29] (1) Dr. Juarez was unavailable to testify at trial about his observations concerning Corley's state of mind at the time of the crime; (2) he was denied fundamental fairness when he was taken off of medication and released into society; and (3) counsel's ineffective assistance was induced by a State impediment where the prosecution substituted another doctor for Dr. Juarez at trial depriving Corley of the best evidence.

---

[26]St. Rec. Vol. 5 of 5, Trial Court Judgment, 6/24/11; Minute Entry, 6/28/11.

[27]St. Rec. Vol. 5 of 5, 4th Cir. Order, 2011-K-1017, 8/18/11; 4th Cir. Writ Application, 2011-K-1017, 7/25/11 (dated 7/6/11).  Prior to the filing of this writ application, Corley filed an application for writ of mandamus in the Louisiana Fourth Circuit to compel the Trial Court to rule on his post-conviction application.  *Id.*, 4th Cir. Writ Application, 2011-K-0718, 6/2/11 (dated 5/30/11).  The Court granted the writ on July 1, 2011, requiring the Trial Court to rule within 60 days of the issuance of its order.  *Id.*, 4th Cir. Order, 2011-K-0718, 7/1/11.

[28]*State ex rel. Corley v. State*, 88 So.3d 454, 454 (La. 2012); St. Rec. Vol. 5 of 5, La. S.Ct. Order, 2011-KH-1921, 5/4/12; St. Rec. Vol. 9 of 10, La. S.Ct. Writ Application, 10-KH-2860, 12/29/10 (dated 12/20/10); St. Rec. Vol. 7 of 10, La. S.Ct. Letter, 2010-KH-2860, 12/29/10 (showing postmark 12/22/10).

[29]Rec. Doc. No. 3, pp. 5, 8.

In its opposition response, the State argues that Corley's federal petition was not timely filed and should be dismissed as time barred.[30]  The State also argues that Corley has failed to present any reason to award equitable tolling based on his alleged mental condition or psychiatric medication.

In his reply to the State's opposition response, Corley argues that prior to the commission of the crime, he was taken off of psychiatric medication and should not have been released on a pass with the likelihood that he would have a psychotic episode.[31]  He also suggests that inmate counsel is not qualified to assist in presenting his claims.

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this court under the federal mailbox rule on May 21, 2012.[33]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[30]Rec. Doc. No. 13.

[31]Rec. Doc. No. 14.

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Corley's federal habeas petition on July 19, 2012, when the filing fee was received after pauper status was denied.  Corley signed the form petition on May 20, 2012, indicating that he would submit it to prison officials for mailing on May 21, 2012.  This is the earliest date appearing in the record on which he indicates that he delivered the pleadings to prison officials for mailing. The fact that he later paid the filing fee would not alter the application of the federal mailbox rule to his *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006)

(recognizing the AEDPA's statute of limitations as a threshold determination).

The State asserts that Corley did not timely file his federal petition.  For the reasons to

follow, Corley's petition was not timely filed and he is not entitled to equitable tolling.

## V.   <u>Statute of Limitations</u>

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his

conviction became final.[34]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  Corley's conviction

became final on February 12, 1996, which was 90 days after the Louisiana Supreme Court denied

his post-appeal writ application.  Under the plain language of § 2244, Corley would have had one

year from that date to file a timely federal application for habeas corpus relief.  However, where a

petitioner's conviction became final prior to the AEDPA, the Fifth Circuit has granted habeas

petitioners one year after the effective date of the AEDPA within which to file timely petitions

---

[34]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest
of--

A.      the date on which the judgment became final by the conclusion of direct review or the
        expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation
        of the Constitution or laws of the United States is removed, if the applicant was prevented
        from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme
        Court, if the right has been newly recognized by the Supreme Court and made retroactively
        applicable to cases on collateral review; or

D.      the date on which the factual predicate of the claim or claims presented could have been
        discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward any
period of limitation under this subsection.  28 U.S.C. § 2244(d).

9

pursuant to 28 U.S.C. §§ 2254 and 2255.  *Flanagan v. Johnson*, 154 F.3d 196, 200 (5th Cir. 1998); *United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999).

The Court in "*Flores* concluded that habeas petitioners must be afforded a reasonable time after AEDPA's effective date for the filing of petitions for collateral relief based upon claims that would otherwise be time-barred before AEDPA's April 24, 1996 effective date."  *Flanagan*, 154 F.3d at 200 (citing *Flores*, 135 F.3d at 1004-05).  "[P]etitioners . . . whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief."  *Id*. (citing *Flores*, 135 F.3d at 1006).

Because Corley's conviction became final before the AEDPA's effective date, he was required to file the instant federal habeas petition within one year of that date or no later than April 24, 1997.  Corley is deemed to have filed this petition on May 21, 2012, over 15 years after the allowable grace period expired, and it must be dismissed as untimely, unless the one-year statute of limitations grace period was interrupted or otherwise tolled in either of the two ways recognized in the applicable law.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000));

*Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recounted above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"), *overruled on other grounds*, *Carey*, 536 U.S. at 214. A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In this case, the AEDPA filing period began to run on April 25, 1996, the day after the AEDPA went into effect. At that time, Corley had no state application for post-conviction relief or other collateral review pending in any court. The grace filing period continued to run without

interruption until it expired on April 24, 1997. Corley did not have any properly filed state post-conviction or other collateral review pending in any state court during this time period. His first state court filing was not submitted until January 21, 1998, almost nine months after the grace filing period expired. A petitioner is not entitled to tolling for matters filed after expiration of the AEDPA filing period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

In addition to this period of time, the record reflects that Corley allowed at least another 4,288 days, almost 11 years and 9 months to pass without a properly filed state application for post-conviction or other collateral review. The Court has counted this extended hiatus to have fallen between the Louisiana Supreme Court's denial of his motion to enforce on August 23, 2000 through May 21, 2012, when he is deemed to have filed this federal petition.[35] Corley's federal habeas petition was without doubt untimely filed.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where

---

[35] Corley's second (and successive) state application for post-conviction relief submitted October 22, 2010, also was not properly filed as defined by federal habeas law. The Louisiana Supreme Court ultimately denied the application as untimely filed under La. Code Crim. P. art. 930.8, noting also that it was impermissibly successive. Thus, the application was not "properly filed" under the AEDPA for tolling purposes. *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (recognizing that a state application dismissed under La. Code Crim. P. art. 930.8 is not properly filed under *Pace*). It is well-settled that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226). In addition, the Court emphasizes that it is questionable under federal habeas law whether Corley's untimely filed 1998 Louisiana Supreme Court writ application would have afforded him any statutory tolling benefit. *Butler v. Cain*, 533 F.3d 314, 318-19 (2008); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009).

the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Thus, equitable tolling has only been extended under extraordinary circumstances which are outside of the control of the petitioner. *See Holland*, 130 S. Ct. at 2574-75 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In this case, Corley has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling. Although Corley does not directly address

the issue of equitable tolling *per se*, he argues that his assigned inmate counsel is not qualified to assist him in filing the claims he has to raise and that his psychiatric care that occurred prior to the murder should warrant some consideration in allowing him to pursue his claims.

As an initial matter, "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013) ("[t]he Sixth Amendment does not apply in habeas proceedings.") (quoting *Shamburger v. Cockrell*, 34 F. App'x 962, 2002 WL 663706, at *3 (5th Cir. Mar. 25, 2002) (Table, Text in Westlaw)); *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004). Consequently, Corley was not entitled to any counsel, much less competent counsel, in pursuing post-conviction relief, and he cannot rely on the assertion of incompetent inmate counsel to establish a basis for equitable tolling. *See Cousin*, 310 F.3d at 848-49; *Manning v. Warden, Claiborne Parish Detention Ctr.*, No. 12-cv-2753, 2013 WL 596348, at *2 n.1 (W.D. La. Jan. 22, 2013), *report adopted by* 2013 WL 596345, at *1 (W.D. La. Feb. 15, 2013).

Furthermore, the Court notes that the claims raised in this federal petition, and Corley's state applications for post-conviction relief, were not based on any new arguments although stated in different terms. These arguments arise from the same grounds asserted by Corley's counsel before, during, and after trial, including on appeal, as they relate to the availability of Dr. Juarez and Corley's need for psychiatric treatment or medication at the time of the commission of the crime. There is no basis to find that Corley was in any way hindered from simply restating these same arguments on a form federal petition even if he and/or inmate counsel were without legal expertise. There is no basis for equitable tolling based on the assistance of inmate counsel.

14

Under a broad reading, Corley also suggests that his prior mental health issues were the underlying provocation for the murder and his unstable mental past made it hard to adequately present his post-conviction claims, even with inmate counsel.  Corley has confused his sanity *vel non* at the time of the commission of the crime with his competence to assist in his defense, or here, his ability to pursue post-conviction relief.  Insanity was the affirmative defense available at his trial and required the jury to determine whether, at the time of the offense, he was incapable of appreciating the nature and wrongfulness of his conduct.  *United States v. Levine*, 80 F.3d 129, 136 (5th Cir. 1996), *cert. denied*, 519 U.S. 824 (1996); *see also* La. Rev. Stat. Ann. § 14:14.  This defense goes to the weight of the evidence surrounding a defendant's mental state <u>at the time</u> of the offense.  Corley's mental state at the time of the heinous murder of Mrs. Martinez in 1989 is not determinative of his ability to pursue post-conviction relief or federal habeas relief in a timely manner between 1996 and 2012.  Thus, whether he should have been on medication or was taken off of medication and given an unsupervised pass in 1989 does not entitle him to equitable tolling.

As for his mental competence, Corley was found competent to proceed with trial and to assist in his defense, which he did.  The record reflects that Corley has <u>never</u> challenged the competency determination made by the state trial court.[36]  Furthermore, "the forensic test for competency does not require that the person be free of psychotic illness or psychiatric problems," and "[m]ental illness is not equivalent to incompetency."  *Colburn v. Cockrell*, 37 F. App'x 90, 2002 WL 1021891, at *6 (5th Cir. May 9, 2002) (Table, Text in Westlaw).  Similarly, a defendant may be found competent to stand trial even where there is evidence of drug addiction or the defendant is taking psychiatric

---

[36]There is a two-part standard for ascertaining competency to assist in the defense and to stand trial: (1) whether the petitioner has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; and (2) whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402 (1960).

medications. *Holmes v. King*, 709 F.2d 965, 967-68 (5th Cir. 1983); *Basso v. Thaler*, 359 F. App'x 504, 507-08 (5th Cir. 2010).

The Fifth Circuit has indicated that the existence of more than a brief period of mental illness or incapacity "might support equitable tolling" of the AEDPA's statute of limitations. *Fisher*, 174 F.3d at 715. Since *Fisher*, however, the Fifth Circuit has declined to apply equitable tolling where the petitioner claimed that a lack of mental competence contributed to a filing delay. *See Boothe v. Quarterman*, 326 F. App'x 257, 258 (5th Cir. 2009); *Pena v. Johnson*, No. 00-41158, 2002 WL 1022044, at *1 (5th Cir. May 14, 2002); *Smith v. Johnson*, 247 F.3d 240, 2001 WL 43520, at *3 (5th Cir. Jan. 3, 2001) (Table, Text in Westlaw); *Francis v. Johnson*, 233 F.3d 575, 2000 WL 1468760, at *1 (5th Cir. Sept. 7, 2000) (Table, Text in Westlaw); *Robinson v. Johnson*, 218 F.3d 744, 2000 WL 821450, at *1 (5th Cir. May 31, 2000). Nevertheless, in considering such a claim, Corley bears the burden of proving that his mental condition prevented him from pursuing his legal rights. *Pena*, 2002 WL 1022044, at *1 (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) and *Fisher*, 174 F.3d at 715).

In this case, however, as noted by the State, there is no indication in the record or the pleadings that Corley has been found incompetent since his conviction or that there is any basis to find here that he was unable to timely file his post-conviction pleadings because of incompetence. Corley has not established that he has been housed in a psychiatric facility or ward since his conviction or that he has undergone extensive and intrusive psychiatric treatment or has been medicated for any diagnosed reason since his conviction that would explain his lack of diligence or that fits the type of extraordinary circumstance defined by the cases allowing equitable tolling.

In fact, Corley offers no explanation for the fact that he was able to file his state post-conviction proceedings in 1998, but was unable to file a state or federal petition in 1996 or 1997. *See Hulsey v. Thaler*, 421 F. App'x 386, 391 (5th Cir. 2011).  Corley did not discuss his mental competence or psychiatric medication as an impediment to filing in the 1998 proceeding.  He did not raise the issue until his 2010 state application for post-conviction relief.  This casts doubt on his diligence and his request for equitable tolling fourteen years later in 2012. *Higginbotham v. Tanner*, No. 10-1130, 2011 WL 3268128, at *3 (E.D. La. July 29, 2011) (Lemelle, J.).

Furthermore, the fact that he was on psychiatric medication at some time in the past would not necessarily condemn his ability to file a form federal petition within the grace filings period under the AEDPA.  The record shows that Corley was not on medication at the time of murder, and there is no indication that he has since been on any medication, much less medication that interfered with his ability to pursue federal habeas relief in a timely manner or any earlier time over the sixteen (16) years after his conviction was final and the passage of the AEDPA in 1996.  The conclusory remarks to the contrary made by Corley and/or his inmate counsel in these federal pleadings are unsupported by the record. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (assuming argument that mental incapacity justified equitable tolling, the petitioner made no factual showing of mental incapacity to establish an extraordinary circumstance); *Smith v. Kelly*, 301 F. App'x 375, 377 (5th Cir. 2008) ("Smith also makes purely conclusory allegations regarding his mental illness.  Although he states he has been diagnosed with 'severe psychotic and/or schizophrenia [sic] tendencies', he nowhere explains how this prevented him from pursuing his legal rights.").  There is nothing in the record to indicate that his extreme delay in pursuing his rights was outside of his control or was anything other than merely sleeping on his rights. *See Fisher*, 174 F.3d at 715 ("'[E]quity is not

intended for those who sleep on their rights.'" (citation omitted)).  The record demonstrates simply an excessive passage of time during which Corley made no challenge to his conviction or sentence in any court.  He has not established that he acted with diligence or is entitled to equitable tolling.

Corley's federal petition is deemed filed on May 21, 2012, which was over 16 years after the AEDPA grace filing period expired on April 27, 1997.  Corley's federal petition must be dismissed as untimely filed.

## VI.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Kenneth Corley's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[37]

New Orleans, Louisiana, this 17th day of May, 2013.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[37]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

18